UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LANCE ALEX VAN ALLEN,              :
    Plaintiff,                 :
                               :
v.                                 :       No. 3:15cv174 (DJS)
                               :
CAROLYN W. COLVIN,                 :
ACTING COMMISSIONER OF             :
SOCIAL SECURITY,                   :
    Defendant.                 :


RULING ON THE PLAINTIFF'S MOTION TO REVERSE AND THE DEFENDANT'S
MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER

      This is an administrative appeal following the denial of an application filed by the

plaintiff, Lance Alex Van Allen ("Van Allen"), for supplemental security income ("SSI").[1] It is

brought pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

      Van Allen now moves for an order reversing the decision of the Commissioner of the

Social Security Administration ("Commissioner"). In the alternative, Van Allen seeks an order

remanding his case for a rehearing. The Commissioner, in turn, has moved for an order affirming

her decision.

      The issues presented are whether: (1) the ALJ erred in finding that Van Allen's alcohol

abuse was a material factor to a finding of disability;  (2) the ALJ properly applied the treating

---

[1]Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. § 405(b)(1). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). *See* 20 C.F.R. §§ 404.929 *et seq*. Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council. *See* 20 C.F.R. §404.967. If the Appeals Council declines review or affirms the ALJ opinion, the claimant may appeal to the United States district court. Section 205 (g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405 (g).

physician rule; and (3) the ALJ's residual functional capacity ("RFC") determination is supported by substantial evidence. For the following reasons, Van Allen's motion to reverse is denied, and the Commissioner's motion for an order affirming her decision is granted.

FACTS

An examination of the record discloses the following: On July 26, 2011, Van Allen filed an application for SSI for an alleged disability that commenced on January 1, 2001. On November 3, 2011, a disability adjudicator in the Social Security Administration denied his application for SSI and thereafter denied his request for reconsideration.

On August 29, 2013, Van Allen appeared with counsel for a hearing before an ALJ. On October 25, 2013, the ALJ issued a decision denying benefits. On December 10, 2014, the Appeals Council denied Van Allen's request for review of that decision thereby making the ALJ's decision the final decision of the Commissioner. This appeal followed.

Van Allen, who was born on October 2, 1968, has an eleventh grade education. He has no past relevant work history.

Medical Evidence

A. Physical Impairment

On November 14, 2007, Dr. Cary Freston issued a consultative examination report concerning Van Allen on behalf of Connecticut Disability Determination Services. Van Allen had reported having "no use of [his] right arm" and a loss of vision in his right eye.  (Doc. # 10-8, at 114, p. 407)[2].  The results of a physical examination indicated "[u]nlimited range of motion

_____

[2]The designation "at 114 " refers to the page number (indicated at the top of the page) assigned by the Court's electronic filing system within the cited document (in this instance, document 10-8). The designation "p. 407" refers to the page number (indicated at the bottom of

in both shoulders" and "[f]ull flexion and extension right elbow." (*Id.* at 116, p. 409). The report also notes that "[r]ight elbow supination[3] is limited by approximately 15 to 25% of range, but full pronation[4] is noted." (*Id.*). The report additionally noted "a mild grade clubbing"[5] of the left hand ring finger. (*Id.*). With regard to Van Allen's right eye, the report indicated that "there is vision present as patient blinked to oncoming object in isolated right eye vision, and he can identify close objects, but with distant vision he describes this as being quite problematic." (*Id.*).

On April 21, 2009, Van Allen was examined by Dr. Gursharan Dhaliwal. The notes of that visit state the following:

> PT [patient] presented c/o [complaining of] lower back pain secondary to lifting a heavy log. PT was vague in his time line. Not describing his pain and then stating that the pain was in his shoulders. . . . When I walked into the room [he] was completely bent over fixing [his] shoe. He had told the nurse that he could not bend over at all. When questioned about this he said "do you think I'm a li[a]r."

(Doc. # 10-11, at 64, p. 1078). Dr. Dhaliwal found no abnormalities in Van Allen's cervical spine, thoracic spine, or lumbar spine.

Van Allen visited the Charter Oak Health Center ("Charter Oak") on July 7, 2011. In the

---

the page) assigned within the administrative record filed by the Commissioner.

[3]"Supination" is "one of the kinds of rotation allowed by certain skeletal joints, such as the elbow and the wrist joints, which permit the palm of the hand to turn up." http://medical-dictionary.thefreedictionary.com/supination (last visited September 28, 2016).

[4]"Pronation" is "the rotation of the forearm so that the palm of the hand faces downward or backward." http://medical-dictionary.thefreedictionary.com/pronation (last visited September 28, 2016).

[5]"Finger clubbing" is defined as "[s]welling of the ends of the fingers so that the normal depression just behind the root of the nail is replaced by a convexity." " http://medical-dictionary.thefreedictionary.com/finger+clubbing (last visited September 28, 2016).

report of that visit, he is described as a "42 yo male with chronic pain after being 'buried alive' [and] also with retinal detachment [in his] left eye." (Doc. # 10-10, at 2, p. 754). A physical examination performed that day was unremarkable. A July 15, 2011 visit to Charter Oak also resulted in an unremarkable physical examination. The report of that visit lists as a chronic problem, "Diabetes mellitus without mention of complication." (*Id.* at 4, p. 756).

On August 10, 2011, Van Allen visited Charter Oak complaining of knee and back pain. A physical examination, performed by APRN Sheldon Hollins[6], indicated no thoracic or lumbar spine tenderness and full range of motion in both knees. A follow-up lumbar spine x-ray disclosed "bilateral spondylolysis . . . but no significant spondylolisthesis is evident."[7] (*Id.* at 30, p. 782). A thoracic spine x-ray was negative.

Van Allen visited Dr. Dhaliwal again on November 5, 2012, complaining of back and knee pain. Dr. Dhaliwal's treatment notes reflect that Van Allen informed the doctor that "he loads trailers with tires and feels a lot of lower back pain when he stops working." (Doc. # 10-11, at 65, p. 1079). Van Allen also informed the doctor that he had "a dirt bike accident years ago and it gives out intermittently." (*Id.*). Examination of his back was normal except for lower back muscle spasms. His knees had normal movement and no tenderness on palpation or ambulation.

---

[6]The designation "APRN" indicates that the person "is a licensed advanced practice registered nurse." Conn. Gen. Stat. § 20-94a(d).

[7]"Spondylolysis is a specific defect in the connection between vertebrae, the bones that make up the spinal column. This defect can lead to small stress fractures (breaks) in the vertebrae that can weaken the bones so much that one slips out of place, a condition called spondylolisthesis. Spondylolysis is a very common cause of low back pain." http://www.my.clevelandclinic.org/health/diseases_conditions/hic_your_back_and_neck/hic_Spo ndylolysis (last visited September 28, 2016).

On June 18, 2013, x-rays were taken of Van Allen's spine and left knee. The findings concerning his spine indicated "minimal anterolisthesis"[8] of L5-S1[9] and "minimal degenerative spondylosis"[10] at L3-L4 and L5-S1. (*Id.* at 73, p. 1087). The x-ray of the left knee was normal.

On July 13, 2013, Van Allen had an MRI taken of his lumbar spine, as well as one of his right shoulder. With regard to the lumbar spine, the MRI indicated a disc extrusion and a disc protrusion[11] at L5-S1 resuling in "mild to moderate bilateral neural foraminal encroachment[12] at L5-S1." (*Id.* at 75, p. 1089).That MRI also indicated hypoplasia[13] of L5, noted a "small dorsal

_____

[8]Anterolisthesis "is basically another term for spondylolisthesis." http://www.spine-health.com/glossary/anterolisthesis (last visited September 28, 2016).

[9]"The base of the spine is made up of the intricate L5-S1 vertebral segment, also called the lumbosacral joint. This spinal segment has several interconnected components, any of which can cause lower back and/or leg pain." http://www.spine-health.com/conditions/spine-anatomy/all-about-l5-s1-lumbosacral-joint. (Last visited September 28, 2016).

[10]"Spondylosis is a broad term that simply refers to some type of degeneration in the spine. Most often, the term spondylosis is used to describe osteoarthritis of the spine, but it is also commonly used to describe any manner of spinal degeneration." http://www.spine-health.com/conditions/lower-back-pain/spondylosis-what-it-actually-means. (last visited September 28, 2016).

[11]Disc extrusions and disc protrusions are types of "disc herniations." A disc herniation is a "displacement of intervertebral disc material beyond the normal confines of the disc, but involving less than 25% of the circumference (to distinguish it from a disc bulge)." https://radiopaedia.org/articles/disc-herniation. (last visited September 28, 2016).

[12]"Foraminal encroachment means that degeneration in the spinal column has caused an obstruction of the foramina, which are the open spaces on either side of the vertebrae through which spinal nerves pass on their way to other parts of the body." https://www.laserspineinstitute.com/back_problems/foraminal_stenosis/encroachment/ (last visited September 28, 2016).

[13]"Hypoplasia" can refer to either the "[u]nderdevelopment of a tissue or organ . . . [or] [a]trophy due to destruction of some of the elements of a tissue or organ . . . ." http://medical-dictionary.thefreedictionary.com/hypoplasia. (last visited September 28 2016).

annular fissure [14]. . . at L4-5,"  and reaffirmed the previously detected spondylolysis. (*Id.*). The

MRI of Van Allen's right shoulder indicated "[m]oderate hypertrophic acromioclavicular

osteoarthritis."[15] (*Id.* at 76, p. 1090).

In a Vision Medical Source Statement dated July 15, 2013, Dr. Susan Janik reported that

Van Allen had "no light perception in [his] left eye," effectively making him "monocular." (*Id.* at

52, 53, pp. 1066, 1067). In her Statement, Dr. Janik opined that Van Allen could frequently lift

and carry less than 10 pounds, occasionally lift and carry up to 10 pounds, frequently bend, and

occasionally squat.

APRN Katherine Dugan completed a form entitled "Physical Medical Source Statement"

concerning Van Allen dated August 26, 2013. In that statement, Nurse Dugan listed diagnoses of

"shoulder pain, arthritis, back pain worsening." (*Id.* at 87, p. 1101). She identified the "clinical

findings and objective signs" of Van Allen's diagnoses as "decreased ROM [range of motion] of

shoulder, tenderness to palpation of lower back, decreased fine motor of hand." (*Id.*). She then

offered her opinions that due to his shoulder and back pain Van Allen could sit and stand/walk

for less than two hours in an 8-hour working day, could never bend, squat, climb stairs or

ladders, was incapable of tolerating even low stress in a work setting, and would likely be absent

from work more than four days per month as a result of his impairments. The form completed by

---

[14]"Annular fissures are a degenerative deficiency of one or more layers that make up the [exterior] of the intervertebral disc." https://radiopaedia.org/articles/annular-fissure. (last visited September 28 2016).

[15]"Osteoarthritis - - also known as degenerative joint disease - - occurs when the cartilage that covers the tops of bones, known as articular cartilage, degenerates or wears down. . . . The AC [acromioclavicular] joint is the point where the collarbone, or clavicle, meets the acromion, which is the tip of the shoulder blade." www.webmd.com/osteoarthritis/guide/shoulder-osteoarthritis-degenerative-arthritis-shoulder#1. (last visited September 28, 2016).

Nurse Dugan included the following advisement: "*Attach relevant treatment notes, radiologist reports, laboratory and test results as appropriate*." (*Id.*) (emphasis in original). There does not appear to be any attachment to her Statement in the record.

Dr. Jose Estela completed a Medical Report form concerning Van Allen dated August 26, 2013. That Report, which was co-signed by Nurse Dugan, indicates a "[d]ate first seen" of "9/5/12" and a "[d]ate last seen" of "8/26/13." (*Id.* at 96, p. 1110). The primary diagnosis listed in the Report is shoulder arthritis with a secondary diagnosis of back pain. The onset date noted for each condition is "2003." (*Id.*). Under the heading "Supportive Test Results" for each diagnosis, the Report states, "MRI 2013." (*Id.*). The Report indicated that Van Allen could sit, stand, or walk for less than one hour during an 8-hour workday, only occasionally lift and carry up to five pounds, and could never bend, squat, crawl, climb, or reach.

B. Mental Impairment/Substance Abuse

As noted and documented in the ALJ's decision, Van Allen "has a long history of mental health difficulties including multiple inpatient hospitalizations, detoxifications, and visits to hospital emergency rooms for threats to commit suicide while intoxicated." (Doc. # 10-3, at 13, p. 12). Van Allen's mental health difficulties include diagnoses of depression and bipolar disorder for which he has been prescribed medications. The majority of his interactions with health care providers, however, relate directly to his history of alcohol abuse.

Van Allen began drinking alcohol at the age of 13 and reported that he drank up to two pints of vodka daily for 20 years. Due to his frequent visits to hospital emergency rooms, he was well-known to hospital staff. Van Allen would sometimes falsely report that he was having seizures during a period of detoxification in order to obtain medication. He also has a history of

falsely expressing suicidal thoughts in order to achieve some unrelated purpose, e.g., obtaining temporary food and housing in a hospital. As noted by the ALJ, "[t]he record indicates that the claimant has a history of manipulative behavior and exaggerating his symptoms to obtain favorable treatment or medication." (*Id.* at 18, p. 17).

A Connecticut Valley Hospital admission assessment form dated February 14, 2013, notes that Van Allen reported that his "longest period of sobriety was 6 months when housing was more stable. 'The tire shop let me have a room.'" (Doc. # 10-11, at 17, p. 1031). During one of Van Allen's hospital admissions for substance abuse rehabilitation, it was noted that he was cooperative with his scheduled groups, collaborated with his assigned staff, and accomplished his goals. Van Allen was incarcerated for periods of time from 2004 to 2007 and from 2008 to 2012. A psychiatric evaluation of him during one of those periods of incarceration, dated December 19, 2011, assesses Van Allen as being alert and awake and having concrete and organized thoughts. A mental status examination of Van Allen made during one of his hospital detoxification admissions to Connecticut Valley Hospital indicates intact memory, concentration, and attention.

In an evaluation dated September 23, 2011 Dr. Edgardo Lorenzo, a non-examining state agency physician, provided his opinion that "[w]ithout DAA [drug addiction or alcoholism] [Van Allen] is capable of performing simple routine repetitive tasks across a normal work day/week." (Doc. # 10-4, at 27, p. 106).

In connection with the hearing before the ALJ, Van Allen's attorney submitted some late-filed exhibits, including a letter from Nicole Goudreau, a social worker at the Wheeler Clinic. The record reflects that Van Allen began treatment at the Wheeler Clinic "on 6/10/13." (Doc. #

10-11, at 78,  p. 1092).  The letter from Social Worker Goudreau, dated August 27, 2013, stated

in part, "This letter is to clarify the mental health and substance abuse symptoms that Lance Van

Allen presents with. His mental health symptoms continue to persist despite cessation of

substance abuse, indicating client will continue to struggle to follow through with activities of

daily living and other social responsibilities while sober." (*Id.* at 84, p. 1098). At the hearing,

Van Allen's attorney suggested having "the supervising doctor . . . send a letter as well." (Doc. #

10-3, at 78, p. 77). The ALJ agreed to a post-hearing submission from the supervising doctor and

also invited Van Allen's attorney to submit "any treatment notes that would support that." (*Id.*).

The Court finds no indication in the record that any such submission was made after the hearing.

Hearing Testimony

At the August 29, 2013 hearing, the ALJ asked Van Allen why he was unable to work.

Van Allen responded that he became very nervous when he was around a lot of people and that

he "could be happy one moment and then a totally different person the next. . . . It's just the

bipolar I got just makes me get like that. So, that makes it hard to be in a work environment

because that's unacceptable." (Doc. # 10-3, at 44, p. 43).  When asked by the ALJ what other

problems he experiences, Van Allen mentioned "a messed up back" and "arthritis in my

shoulder." (*Id.* at 45, p. 44).  With regard to his arthritic shoulder he added that "when I pick up a

cup of coffee . . . it hurts real bad." (*Id.*). Van Allen testified that he had a problem reaching in

front of his body or overhead and could not sit or stand for extended periods of time. He also

testified that he had trouble concentrating and remembering, had feelings of guilt and suicidal

thoughts, and  heard voices.

Van Allen testified that he had been living in a "sober house" for three months, but did

-9-

not interact with other residents there because he is a "loner." (*Id.* at 46, 47, pp. 45, 46). He did his own laundry at the sober house and prepared his own meals with food brought to him by his mother. He also tried to attend AA meetings every night.

A vocational expert, Jeffrey Joy, also testified at the hearing. The ALJ asked the vocational expert if there were unskilled positions that could be filled by an individual of Van Allen's age, education, and experience who had the following limitations: an ability to perform light work only, can tolerate occasional and superficial contact with the general public and coworkers, can adapt to simple change and make simple work-related decisions, can understand, remember and carry out simple, routine and repetitive tasks with normal breaks on a sustained basis, can only perform tasks that do not require depth perception, must avoid exposure to hazards (such as dangerous moving machinery and unprotected heights), can occasionally crouch, crawl, kneel and balance, cannot climb ladders, ropes or scaffolds, and is unable to perform work that has strict rate, pace or production requirements. The vocational expert identified the following positions as suitable for such an individual: cleaner/housekeeper, of which there were 3,200 jobs in the Connecticut regional economy and 288,000 jobs in the national economy; mailroom clerk, of which there were 600 jobs in the Connecticut regional economy and 51,000 jobs in the national economy; and laundry folder, of which there were 640 jobs in the Connecticut regional economy and 78,800 jobs in the national economy.

The ALJ's Decision

In her decision, the ALJ found that Van Allen had not engaged in substantial gainful activity since July 26, 2011, the application date, and had the following severe impairments:

polysubstance dependence (alcohol, cocaine and cannabis[16]), depression/bipolar disorder, lumbar degenerative disc disease, right shoulder tenosynovitis,[17] clubbed left ring finger, and loss of vision in his left eye.

The ALJ found that Van Allen's impairments, including the substance abuse disorder, met the criteria of a per se disabling impairment listed in the governing regulations. This would ordinarily result in a finding of disability. The ALJ found further, however, that if Van Allen stopped his substance abuse, his remaining impairments, while still considered severe, would not meet or medically equal the criteria of a per se disabling impairment listed in the regulations. Pursuant to 42 U.S.C. § 1382c (a)(3)(J), "an individual shall not be considered to be disabled for purposes of [disability benefits] if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled."

The ALJ then found that if Van Allen stopped his substance abuse, he would have the residual functional capacity ("RFC") to perform light work with the limitations he identified in his hypothetical question to the vocational expert. On the basis of the expert's response, the ALJ also found that there would be a significant number of jobs in the national economy that Van Allen could perform and concluded that he was not disabled for purposes of the Social Security Act.

With regard to Van Allen's credibility, the ALJ found that certain facts "erode[d] the

---

[16]While alcohol abuse predominates in the medical records concerning Van Allen, there are some reports in the records of cocaine and marijuana use as well.

[17]"Tenosynovitis is inflammation of the lining of the sheath that surrounds a tendon (the cord that joins muscle to bone)." https://medlineplus.gov/ency/article/001242.htm (last visited September 28, 2016).

credibility of his complaints of disabling mental and physical limitations." (Doc. # 10-3, at 19, p. 18). These facts included "a history of threatening suicide in order to gain food and shelter," as well as heavy work activity during a time when he alleged he was unable to work in any capacity. (*Id.*).

STANDARD

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205 (g) of the Social Security Act, 42 U.S.C. § 405 (g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405 (g). Accordingly, the court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Id.*; *Wagner v. Secretary of Health and Human Services*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching his conclusion, and whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). Therefore, absent legal error, this court may not set aside the decision of the Commissioner if it is supported by substantial evidence. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Further, if the Commissioner's decision is supported by substantial evidence and not affected by legal error, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit has defined "substantial evidence" as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on Behalf of*

*Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence must be "more than a scintilla or a touch of proof here and there in the record." *Williams*, 859 F.2d at 258.

The Social Security Act establishes that benefits are payable to individuals who have a disability. 42 U.S.C. § 423 (a)(1). "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . ." 42 U.S.C. § 423 (d)(1). In order to determine whether a claimant is disabled within the meaning of the Social Security Act, the ALJ must follow a five-step evaluation process as promulgated by the Commissioner.[18]

In order to be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423 (d)(2)(A). "'[W]ork which exists in the national economy' means work which exists in significant numbers

---

[18]The five steps are as follows: (1) The Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him or her disabled, without considering vocational factors such as age, education, and work experience; (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps. 20 C.F.R. § 416.920 (a)(4)(i)-(v).

either in the region where such individual lives or in several regions of the country." *Id.*[19]

DISCUSSION

A.  Alcohol Abuse As A Factor Material To A Finding Of Disability

Van Allen argues that the ALJ erred in finding that his substance abuse was a contributing factor material to a determination of disability. The Commissioner responds that Van Allen failed to meet his burden of proving that he would be disabled in the absence of his substance abuse and that substantial evidence in the record supports the finding that substance abuse was a factor material to a finding of disability.

As previously noted, "an individual shall not be considered to be disabled for purposes of [disability benefits] if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 1382c (a)(3)(J). The Second Circuit has determined that disability claimants "bear the burden of proving that they would be disabled in the absence of DAA [drug addiction or alcoholism] . . . ." *Cage v. Commissioner of Social Security*, 692 F.3d 118, 120  (2d Cir. 2012). Van Allen relies on the August 27, 2013 letter from Social Worker Goudreau as "the evidence plainly show[ing] [that] the plaintiff's mental condition did not improve when he maintained significant periods of sobriety." (Doc. # 18-1, at 5). The Court finds that this evidence falls short of satisfying Van Allen's burden of proving that he would be disabled in the absence of his substance abuse. This letter, from a social worker who had been treating Van Allen only since June 2013, is rather

---

[19]The determination of whether such work exists in the national economy is made without regard to: (1) "whether such work exists in the immediate area in which [the claimant] lives"; (2) "whether a specific job vacancy exists for [the claimant]"; or (3) "whether [the claimant] would be hired if he applied for work." 42 U.S.C. § 423 (d)(2)(A).

vague in its substance, stating only that "mental health symptoms continue to persist despite cessation of substance abuse . . . ." (Doc. # 10-11, at 84, p. 1098). There is nothing in the letter addressing the frequency, duration, or intensity of these symptoms in the absence of substance abuse. Additionally, the ALJ offered Van Allen the opportunity to supplement the letter with a submission by the supervising doctor at the Wheeler Clinic and any treatment notes that would support the opinions expressed in the letter from the social worker. The Court finds no indication in the record that anything was filed after the hearing to supplement the August 27, 2013 letter.

Because Van Allen failed to satisfy his burden of providing evidence sufficient to support a finding that he would be disabled in the absence of substance abuse, his claim as to this issue fails. The Court also notes that there is substantial evidence supporting the finding that Van Allen's substance abuse was a contributing factor material to his being considered disabled. As noted by the ALJ, "when sober the claimant exhibits some psychiatric symptoms but not as intense or severe as alleged by the claimant." (Doc. # 10-3, at 19, p. 18). As examples supporting this finding, the ALJ cites assessments made of Van Allen at times of his sobriety, including notations that he was "awake, alert and [had] concrete and organized thinking," "had intact memory, concentration and attention," as well as Van Allen's own report that he had performed work activities during a period of sobriety. (*Id.* at 19, 20, pp. 18, 19).

B.  Treating Source Opinions

Van Allen argues that the ALJ erred in giving only partial weight to the opinions of the following treating sources: Dr. Estela, Nurse Dugan, and Social Worker Goudreau. He contends that the opinions of these treaters should have been accorded either controlling or significant weight. The Commissioner argues in response that when the opinion of a treater is either

-15-

unsupported or inconsistent with the record, the ALJ is not required to defer to that opinion, and, for that reason, the ALJ properly exercised her discretion with regard to the opinions of these treaters.

"[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation marks omitted).  Even when the opinion of a treating physician is not given controlling weight, the ALJ is required to consider certain factors in determining how much weight it should be given. These factors include the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, the medical support for the opinion provided, the consistency of the opinion with the record as a whole, and whether the opinion is from a specialist in the areas at issue. *See* 20 C.F.R. § 404.1527 (c)(2)-(5).

In a Medical Report dated August 26, 2013, Dr. Estela provided his opinion that Van Allen was severely restricted in his abilities to sit, stand, and walk during the course of an 8-hour workday, and could never bend, squat, crawl, climb, or reach. Nurse Dugan co-signed the Medical Report. The Report lists diagnoses of shoulder arthritis and back pain and identifies "MRI 2013" as the test result supporting the opinion. (Doc. # 10-11, at 96, p. 1110). Van Allen had MRIs of his right shoulder and back in July 2013. These tests showed mild to moderate conditions relating to his right shoulder and back. The Medical Report does not address how the mild to moderate conditions indicated in the MRIs support the opinion that Van Allen was as severely restricted as is represented in that Report.

The Medical Report notes a  "[d]ate first seen" of "9/5/12." (*Id.*). There is no indication of how many times either Dr. Estela or Nurse Dugan treated Van Allen between September 2012 and August 2013 or of the nature and extent of the treatment relationship between Van Allen and these treaters. The Report also states an onset date of 2003 for the listed conditions of shoulder arthritis and back pain, but  does not identify any other medical evidence relating to the time of alleged onset, i.e., 2003, or to any time period before September 2012. In her decision, the ALJ concludes that theses circumstances "indicate[] heavy reliance on self-report." (Doc. # 10-3, at 20, p. 19). The ALJ also "noted that the claimant was functioning in a far heavier capacity than opined, lifting heavy tires, which casts doubt upon the reliability of the extreme limitations assigned in the opinions." (*Id.*).

In a separate Physical Medical Source Statement, also dated August 26, 2013, Nurse Dugan repeated her opinion that Van Allen was severely limited in his work-related abilities and also opined that he would likely be absent from work more than four days per month as a result of his impairments.  The "clinical findings and objective signs" of Van Allen's impairments identified in this Statement were "decreased ROM [range of motion] of shoulder, tenderness to palpation of lower back, decreased fine motor of hand." (*Id.* at 87, p. 1101). There is no reference in this Statement to the July 2013 MRIs which indicated mild to moderate shoulder and back conditions. The form completed by Nurse Dugan included the following advisement: "*Attach relevant treatment notes, radiologist reports, laboratory and test results as appropriate*." (*Id.*) (emphasis in original). There does not appear to be any attachment to her Statement in the record.

Opinions of treaters "need not be given controlling weight where they are contradicted by other substantial evidence in the record. Genuine conflicts in the medical evidence are for the

Commissioner to resolve." *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (citations

omitted). The Court finds that the opinions of Dr. Estela and Nurse Dugan are not only

inconsistent with other substantial evidence, but also, in the case of the Medical Report, are

inconsistent with the very test results that are identified as the support for those opinions.

Considering as well the brevity of the treatment period relative to the alleged onset date and the

dearth of information about the nature and extent of the treatment relationship, the Court finds

that the ALJ was not required to defer to the opinions of Dr. Estela and Nurse Dugan. The Court

finds further that the ALJ appropriately exercised her discretion and gave good reasons for her

decision to give "only partial weight to the opinions." (Doc. # 10-3, at 20, p. 19). *See Halloran v.

Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted) ("the Commissioner

must provide a claimant with good reasons for the lack of weight attributed to a treating

physician's opinion").

With regard to Social Worker Goudreau, the Court notes that a social worker is not an

"acceptable medical source" for purposes of the treating physician rule. *See Monette v. Colvin*,

No. 15-3399, 2016 U.S. App. LEXIS 12484, at *6 (2d Cir. July 7, 2016). Additionally, the Court

addressed the deficiencies in the social worker's letter in the previous section of this ruling. Put

simply, "[t]he statement by [Van Allen's] social worker on this point was not from an

'acceptable medical source' and, in any event, was so lacking in detail as to be minimally

probative."). *Id.* The Court finds no merit in Van Allen's arguments concerning the weight given

by the ALJ to the opinions of his treaters.

C. Residual Functional Capacity Determination

Van Allen argues that the ALJ erred by failing to include in her hypothetical questions to

-18-

the vocational expert "limitations that made him unable to work" and were "documented by his doctors." (Doc. # 18-1, at 4). In effect, he is contesting the Residual Functional Capacity determination made by the ALJ and incorporated into her questions to the vocational expert. The Commissioner responds that the ALJ's determination is supported by substantial record evidence.

Residual Functional Capacity ("RFC") is "what an individual can still do despite his or her limitations." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (internal quotation marks omitted). RFC is "an assessment based upon all of the relevant evidence . . . [which evaluates a claimant's] ability to meet certain demands of jobs, such as physical demands, mental demands, sensory requirements, and other functions . . . ." 20 C.F.R. § 220.120(a).

"When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account . . . ." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). However, the ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Id.* In determining credibility, the ALJ must first determine "whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Id.* If so,  the ALJ must consider "the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." *Id.* (internal quotation marks and alterations omitted).

With regard to the first step, the ALJ found that "[i]f the claimant stopped the substance abuse, the undersigned finds that the claimant's medically determinable impairments could

reasonably be expected to produce the alleged symptoms . . . ." (Doc. # 10-3, at 18, p. 17). With regard to the intensity, persistence, and limiting effects of those symptoms, however, the ALJ found Van Allen not credible to the extent he alleged that those symptoms rendered him unable to work in any capacity. The ALJ noted a number of instances where Van Allen's testimony concerning his symptoms was inconsistent with treatment notes and other objective evidence regarding his conditions. The ALJ also noted that "[t]he record indicates that the claimant has a history of manipulative behavior and exaggerating his symptoms to obtain favorable treatment or medication" and that "the record reflects unreported heavy work activity, loading trailers with tires, during the time the claimant alleges that he was unable to work in any capacity." (*Id.* at 18, 19, pp. 17, 18). These considerations "erode[d] the credibility of his complaints of disabling mental and physical limitations." (*Id.* at 19, p. 18).

"The ALJ set forth specific reasons for why she found [Van Allen's] testimony not credible and an ALJ's credibility determination is generally entitled to deference on appeal." *Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2013). The Court finds that the ALJ properly exercised her discretion in "weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier*, 606 F.3d at 49.  With regard to Van Allen's contention that his severe limitations were documented by his treaters, the Court has previously discussed the ALJ's treatment of the opinions of Van Allen's treaters and found that the ALJ did not err in according only partial weight to those opinions.

The ALJ made the following finding with regard to Van Allen's RFC:

> If the claimant stopped the substance abuse, the claimant would have
> the residual functional capacity to perform light work . . . except
> the claimant can occasionally crouch, crawl, kneel, and balance.

> He cannot climb ladders, ropes or scaffolds, but has no limit on stooping (bending at the waist) or climbing ramps and stairs. The claimant can understand, remember and carry out simple, routine, and repetitive tasks throughout an ordinary workday and workweek with normal breaks on a sustained basis without collaboration and without strict rate, pace or production requirements. The claimant can tolerate occasional and superficial contact with the general public and with coworkers. He can adapt to simple change and make simple work related decisions in the routine work setting. Due to monocular vision, he can perform tasks that do not require good depth perception. He must avoid exposure to hazards such as dangerous moving machinery and unprotected heights (due to monocular vision).

(Doc. # 10-3, at 17-18, pp. 16-17). In discussing this finding, the ALJ stated that, "In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ." (*Id.* at 18, p. 17).

The ALJ's discussion of Van Allen's RFC includes references to a number of treatment notes and other objective medical evidence, e.g., the results of his MRIs, that support her finding. The ALJ also relied upon assessments of Van Allen's mental status made during three different hospital admissions and one period of incarceration, as well as certain of the opinions provided by Van Allen's treaters.

On September 23, 2011, Dr. Edgardo Lorenzo, a non-examining state agency physician, opined that "[w]ithout DAA [drug addiction or alcoholism] [Van Allen] is capable of performing simple routine repetitive tasks across a normal work day/week." (Doc. # 10-4, at 27, p. 106). Despite the fact that the ALJ gave only limited weight to this opinion, it is record evidence that may be considered by the Court in deciding whether the ALJ's RFC determination is supported by substantial evidence. In *Pellam v. Astrue*, 508 F. App'x 87 (2d Cir. 2013), the

Second Circuit took note of the fact that the opinion of a consultative physician was consistent with the ALJ's ultimate RFC determination. Despite the fact that the ALJ had rejected that physician's opinion in rendering a decision, the Second Circuit included that opinion in its "independent review of the existing record" and concluded that the RFC determination "was supported by substantial evidence." *Id.* at 90.

The Court finds that the ALJ's determination that Van Allen could perform light work with the limitations specified in her decision is supported by substantial evidence in the record. For that reason, Van Allen's claim regarding the ALJ's RFC determination fails.[20]

CONCLUSION

For the reasons stated above, the plaintiff Van Allen's motion to reverse the Commissioner's decision (**doc. # 18**) is **DENIED** and the Commissioner's motion to affirm the decision (**doc. # 20**) is **GRANTED**.

---

[20]Van Allen also argues that the ALJ erred by not considering the side effects from his medications. The ALJ specifically addressed this in connection with her RFC determination: "the record reflects that the claimant's medications could have a sedating effect, although the claimant has denied experiencing side effects, and the undersigned has considered this in the residual functional capacity assigned."  (Doc. # 10-3, at 20, p. 19). In a Cedarcrest Hospital Client Statement dated June 6, 2010, the answer "None" is listed in response to the inquiry, "Problems or side effects from my medications include:" (Doc. # 10-9, at 135, p. 665). At the hearing, Van Allen testified that certain of the medications he was taking at that time made him "drowsy" or feel "not dizzy but lightheaded." (Doc. # 10-3, at 62, 63, pp. 61, 62).. The Court finds this claim to be without merit.

Judgment shall enter in favor of the defendant Commissioner.  The Clerk is directed to close the file.

SO ORDERED this 29th  day of September,  2016.


_____/s/ DJS_____
                        Dominic J. Squatrito
                        United States District Judge